IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   1:21-cv-1096

**Utkal Sharma**

  Plaintiff,

v.

**L3Harris Technologies, Inc.**

  Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Utkal Sharma ("Mr. Sharma" or "Plaintiff"), by his undersigned counsel, files this Complaint against L3Harris Technologies, Inc. ("L3Harris" or "Defendant"), alleging as follows:

## PARTIES

1. At all relevant times to the allegations contained herein, Mr. Sharma was a citizen of the United States of America and resided in the state of Colorado.

2. L3Harris is a Delaware corporation with its principal place of business located at 1025 W NASA Blvd, Melbourne, FL 32919, United States.

3. L3Harris maintains a commercial business at 385 Interlocken Crescent, #300, Broomfield, CO 80021.

**JURISDICTION AND VENUE**

4.      This court has original jurisdiction of the subject matter of the allegations contained in

the complaint pursuant to 28 U.S.C. §§ 1331, 1332, 42 U.S.C. §§ 2000e-5(f), 29 U.S.C. §

2617(a)(2), and 42 U.S.C. § 12117.

5.      The acts complained of herein were committed or had their principal effect within the

District of Colorado, and therefore, venue for this civil action is proper pursuant to 28 U.S.C. §

1391(b).

**ADMINISTRATIVE PROCEDURES**

6.      On September 30, 2020, Mr. Sharma filed a Charge of Discrimination, Charge No. 541-

2020-02166, with the U.S. Equal Opportunity Commission ("EEOC"), alleging employment

discrimination.

7.      On January 28, 2021, Mr. Sharma received his Notice of Right to Sue, dated January 28,

2021.

8.      Mr. Sharma has fully complied with all administrative prerequisites of jurisdiction in this

Court under Title VII.

9.      Mr. Sharma has exhausted all administrative remedies and this action is timely filed.

**GENERAL ALLEGATIONS**

10.     Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation

set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

11.     Mr. Sharma is a South Asian male whose national origin is India.

12.     In late 2014, Mr. Sharma was diagnosed with young onset Parkinson's disease.

13.     Parkinson's is a neurological disorder that leads to shaking, stiffness, and difficulty with

walking, balance, and coordination.

**Mr. Sharma's History of Employment with L3Harris**

14.     MapMart hired Mr. Sharma on October 16, 2002.

15.     Mr. Sharma was initially hired as a programmer by MapMart.

16.     Mr. Sharma worked his way up to being Vice President and Director of Software

Development.

17.     Mr. Sharma supervised three (3) employees as Vice President and Director of Software

Development.

18.     In 2015, MapMart was acquired by Harris Corp.

19.     When MapMart was acquired by Harris Corp. in 2015, Mr. Sharma became an employee

of Harris Corp.

20.     Mr. Sharma was integral in the transition, assisting greatly with the change in

infrastructure.

21.     Mr. Sharma received one year of salary as a retention bonus after Harris Corp. acquired

MapMart.

22.     Mr. Sharma's title changed from Vice President and Director of Software Development

to Software Engineering Manager.

23.     The change in Mr. Sharma's title did not affect the responsibilities of his position.

24.     After the change in title, the same three employees reported to Mr. Sharma.

25.     After the change in title, Mr. Sharma's salary stayed the same.

26.     Mr. Sharma worked in the Lone Tree office, which was closed in January 2019.

27.     Employees of the Lone Tree office, including Mr. Sharma were told to report to Scott

Paswaters in the Broomfield office.

28.     Harris Corp. became L3Harris in mid-2019.

29.    Mr. Sharma was highly skilled at his job.

30.    Mr. Sharma received raises consistently for seventeen years.

31.    While working for MapMart, Mr. Sharma never received a negative performance evaluation and did not have any work performance issues requiring any form of discipline.

32.    From the time Harris Corp./L3Harris acquired MapMart in 2015, Mr. Sharma continued to receive positive ratings on his annual performance reviews.

33.    His overall ratings ranged from Meets Expectations to Exceeds Expectations during this time period.

34.    For the evaluation years of 2015 through 2018, Mr. Sharma never received a rating below Meets Expectations in any of the sub-categories that he was rated on in each review.

35.    Mr. Sharma did not receive any performance review with Needs Improvement ratings from 2002 until his 2019 review.

**Mr. Sharma Informs L3Harris of his Parkinson's Diagnosis**

36.    In March 2018, Mr. Sharma informed L3Harris of his diagnosis with young onset Parkinson's disease.

37.    Mr. Sharma informed his supervisor at the time, Scott Midler ("Mr. Midler"), Director of Software Engineering, Robert Laudati ("Mr. Laudati"), head of the Boulder office, and Pam Pajer ("Ms. Pajer"), Director of HR of his diagnosis.

38.    Mr. Sharma also informed Mr. Midler, Mr. Laudati, and Ms. Pajer that he would most likely need brain surgery in the upcoming years.

39.    Mr. Sharma did not inform very many employees of his diagnosis with Parkinson's.

40.    Later, Scott Paswater ("Mr. Paswater") replaced Mr. Middler as Mr. Sharma's supervisor.

41.     Mr. Sharma and Mr. Middler informed Mr. Paswater about Mr. Sharma's Parkinson's diagnosis.

42.     In addition to Mr. Paswaters, Mr. Midler, Mr. Laudati, and Ms. Pajer, the other L3Harris employees that were aware of Mr. Sharma's diagnosis included Angela Molitoris ("Ms. Molitoris"), Manager of Engineering Resources and Development, and Tim Ruthersby ("Mr. Ruthersby"), Software Engineer Sr. Developer.

43.     Ms. Molitoris is a white female.

44.     Mr. Ruthersby is a white male.

45.     Prior to the closing of the Lone Tree Office, the three employees that Mr. Sharma supervised were removed from his chain of command.

46.     The three employees were instead to report to Ms. Molitoris.

47.     Mr. Sharma was told that since he was sick that it would be better if his employees reported to Ms. Molitoris.

48.     In January 2019, when Mr. Sharma was transferred to the Broomfield office, Mr. Paswaters changed Mr. Sharma's title to Scientist Software Engineering because Mr. Sharma was not supervising employees.

49.     The change in Mr. Sharma's title did not affect the responsibilities of his position.

50.     The change in Mr. Sharma's title did not affect his salary.

**Mr. Sharma's Concerns about Being Treated Differently Due to His Parkinson's**

51.     After learning of his diagnosis, Ms. Molitoris started to make comments on several occasions about Mr. Sharma's appearance such as calling him "stone faced" or saying that he looked angry.

52.     Loss of facial expression is a symptom of Parkinson's.

53.     Mr. Sharma's wife sent Ms. Molitoris an article explaining the side effects of Parkinson's, including the loss of expressions.

54.     Ms. Molitoris barely acknowledged the article and continued to make comments about Mr. Sharma's expression.

55.     Ms. Molitoris made allegations that Mr. Sharma's lack of emotion was affecting his ability to work with his coworkers.

56.     In August 2018, Mr. Sharma became concerned that Ms. Molitoris and Mr. Ruthershy were harassing him due to his Parkinson's.

57.     In addition to making comments about his facial expressions, Ms. Molitoris and Mr. Ruthershy would interfere with Mr. Sharma's work to insure that his assignments were not finished on time.

58.     Mr. Ruthershy would change the scope of a work project mid-project so that the results could not be properly delivered incrementally, which is the basis of the software development agile process.

59.     Ms. Molitoris and Mr. Ruthershy accused Mr. Sharma of not communicating with his peers.

60.     Yet, Mr. Sharma had also been instructed by Ms. Molitoris to not collaborate with his co-workers or to accept help from co-workers.

61.     These instructions created delays in projects and work because of the lack of communication.

62.     Mr. Sharma was blamed for the delays when the instructions from his supervisor actually caused the delays.

63.     Mr. Ruthersby would complain about Mr. Sharma to Ms. Molitoris over small, inconsequential matters.

64.     Ms. Molitoris was aware of Mr. Ruthersby's actions and encouraged him to continue.

65.     Mr. Sharma sent an email to Ms. Molitoris and Mr. Ruthersby in August 2018, raising his concerns with them that he felt they were discriminating against him due to his Parkinson's.

66.     In the August 2018 email, Mr. Sharma also expressed in the email that he believed Ms. Molitoris and Mr. Ruthersby were harassing him due to his Parkinson's and that doing so was against company policy.

67.     Mr. Sharma also addressed these concerns with Mr. Paswaters.

68.     The company did not take any action to address Mr. Sharma's concerns.

69.     Another employee, Melissa Jackson ("Ms. Jackson"), also harassed Mr. Sharma under Ms. Molitoris' supervision.

70.     Mr. Sharma had been in charge of managing access to all MapMart's and then Harris Corp./L3Harris' passwords since 2002.

71.     Ms. Jackson took over access of the passwords from Mr. Sharma.

72.     Ms. Jackson is a white female.

73.     Ms. Molitoris was Ms. Jackson's supervisor.

74.     In January 2019, Mr. Sharma overheard Ms. Molitoris telling Mr. Ruthersby that she did not want to work with Indians anymore.

75.     In early 2019, when Mr. Paswaters was Mr. Sharma's supervisor, Mr. Paswaters informed Ms. Molitoris of Mr. Sharma's Parkinson's diagnosis.

**Mr. Sharma's Complaints of Discrimination to the Ethics Department**

76.     In mid-April 2019, Mr. Sharma told Ms. Molitoris that he believed Mr. Ruthersby's and her treatment of him was harassment based on his disability.

77.     Mr. Sharma informed Ms. Molitoris that it was impossible to work in such a hostile work environment.

78.     In response, Ms. Molitoris reported Mr. Sharma to L3Harris' Ethics department.

79.     Mr. Sharma was contacted by the Ethics department in April 2019.

80.     When Mr. Sharma was contacted by the Ethics department, he made a complaint of disability discrimination.

81.     Mr. Sharma informed the Ethics department that he believed Mr. Ruthersby's, and in proxy Ms. Molitoris' treatment of him was based on his disability.

82.     Mr. Sharma never heard back from the Ethics department after he made this report of discrimination.

83.     At the same time that Mr. Sharma made a complaint to the Ethics department regarding disability discrimination, another employee, Vidudh Bhatnagar ("Mr. Bhatnagar"), made a complaint of race discrimination.

84.     Mr. Bhatnagar is an Indian male.

85.     Mr. Ruthersby had also been sabotaging the work of Mr. Bhatnagar.

86.     Ms. Molitoris was aware of what Mr. Ruthersby was doing.

87.     The next week, Mr. Bhatnagar was put on 60-day notice of termination.

88.     Mr. Bhatnagar was also supervised by Mr. Sharma but reported to Ms. Molitoris.

89.     After Mr. Bhatnagar was terminated, L3Harris interfered with Mr. Bhatnagar's job search following his termination.

90.     Because of this, Mr. Bhatnagar was unable to find another job prior to his work Visa expiring.

91.     Mr. Bhatnagar was forced to return to India.

92.     In May 2019, Mr. Sharma wrote to Mr. Paswaters and to an employee in the ethics department to report Ms. Molitoris' discriminatory behavior, including that she was making comments about Mr. Sharma looking angry and her nit-picking his work.

**<u>Ms. Molitoris Becomes Mr. Sharma's Supervisor</u>**

93.     In early-2019, Ms. Molitoris became Mr. Sharma's supervisor.

94.     In his first one-on-one meeting with Ms. Molitoris after she became his supervisor, Mr. Sharma reminded her of his Parkinson's diagnosis.

95.     After Ms. Molitoris became his supervisor, Mr. Sharma experienced a drastic change in how he was treated in the workplace as compared to his co-workers.

96.     Ms. Molitoris began to overly scrutinize Mr. Sharma's work and constantly criticized Mr. Sharma.

97.     Ms. Molitoris regulated when Mr. Sharma went to the bathroom, lunch, or even stepped away from his desk.

98.     She did this even though there were no complaints that Mr. Sharma was not working enough or not completing his work.

99.     Ms. Molitoris also demoted Mr. Sharma.

100.    Mr. Sharma's title stayed the same, but Ms. Molitoris changed his job duties so he was performing the work of a programmer instead of his duties as a Scientist Software Engineering.

101.    Mr. Ruthersby continued to harass Mr. Sharma after Ms. Molitoris became Mr. Sharma's supervisor.

102.     Ms. Molitoris was aware of Mr. Ruthersby's actions and encouraged his actions.

103.     Due to the harassment of Mr. Ruthersby and Ms. Molitoris, Mr. Sharma was unable to finish his work on time.

**Additional Discriminatory Treatment**

104.     Mr. Bhatnagar and Mr. Sharma were the only two Indian employees in the L3Harris Lone Tree office.

105.     The Lone Tree office also had an outsourced team of contractors.

106.     Approximately four of these contractors were Indian.

107.     After Ms. Molitoris got indirect control of MapMart in early 2018 and direct control in mid-2019, every Indian employee in the Lone Tree office, including the Indian contractors, was terminated.

108.     Mr. Sharma worked from home four days a week as did his co-workers.

109.     Ms. Molitoris required Mr. Sharma to come into the office once a week for one-on-on meetings.

110.     Ms. Molitoris would intentionally change the date of these meetings or postpone scheduled one-on-ones with Mr. Sharma.

111.     Each time Ms. Molitoris intentionally changed the date of or postponed scheduled one-on-ones with Mr. Sharma, his Parkinson's symptoms would be affected.

112.     Driving exasperated Mr. Sharma's Parkinson's symptoms and driving was difficult for Mr. Sharma.

113.     To attend meetings that would then be canceled or postponed, Mr. Sharma would have to drive 60 miles one way.

114.     Ms. Molitoris was aware that driving exasperated Mr. Sharma's Parkinson's symptoms.

115.    Often, driving would cause Mr. Sharma to experience a symptom of Parkinson's called dystonia.

116.    Dystonia is a movement disorder in which a person's muscles contract uncontrollably.

117.    Dystonia is very painful.

118.    Dystonia could last ten (10) minutes up to an hour and a half.

119.    Mr. Sharma would experience dystonia when he was at the office after being required to drive to the office.

120.    When he experienced dystonia at work, he would go wait in his car until the symptoms subsided.

121.    Every time Mr. Sharma drove, his family would stay on-call just in case it triggered dystonia.

**Mr. Sharma's Brain Surgeries**

122.    Mr. Sharma had his first of three brain surgeries in August 2019.

123.    Between August 2019 and January 2020, Mr. Sharma had three brain surgeries and programming for deep brain stimulation ("DBS") which is a surgery to implant a device that sends electrical signals to brain areas responsible for body movement.

124.    During this time, Mr. Sharma also had multiple programming appointments during which doctors try to stimulate different parts of his brain.

125.    Mr. Sharma took eight weeks of Family Medical Leave ("FML") and short-term disability through L3Harris' policy.

126.    Mr. Sharma returned to work in late 2019.

127.    L3Harris requested a certificate of fitness from Mr. Sharma's neurologist prior to him returning to work.

128.    Mr. Sharma's neurologist cleared him to return to work.

**Discriminatory Treatment After Returning to Work**

129.    In January 2020, Mr. Sharma self-identified as disabled in L3Harris' HR portal.

130.    L3Harris did not engage in the interactive process.

131.    After returning to work, Ms. Molitoris and Mr. Ruthersby's treatment of Mr. Sharma followed the same pattern as their pre-surgery treatment of him.

132.    Ms. Molitoris was aware that Mr. Sharma was continuing treatments for his Parkinson's after his surgeries, including programing sessions.

133.    By January 2020, it was clear to Mr. Sharma that he needed to report the discriminatory treatment he was being subjected to in the workplace to persons not in his supervisory chain of command.

134.    On January 28, 2020, HR was informed that Mr. Sharma was concerned that he was being discriminated against and his supervisor was treating him differently based on his race and South Asian origin.

135.    On January 29, 2020, Mr. Sharma was presented with his 2019 performance review for the months of July 2019 through December 2019.

136.    He was rated significantly lower than previous reviews when Ms. Molitoris was not Mr. Sharma's supervisor.

137.    Mr. Sharma was given his 2019 review the day before his scheduled one-on-one review meeting with Ms. Molitoris.

138.    By January 29, 2020, Ms. Molitoris had only been Mr. Sharma's supervisor for approximately eight months.

139.    For a majority of those months, Mr. Sharma was out of the office on FML and short-term disability receiving three brain surgeries or attending programing sessions.

140.    On January 30, 2020, early in the morning, Mr. Sharma provided L3Harris with pertinent information regarding his disability and the discriminatory treatment he had been subjected to by Ms. Molitoris and Mr. Ruthersby.

141.    As part of this documentation, Mr. Sharma provided L3Harris a link to a pre-surgery video on YouTube of him experiencing dystonia.

142.    Mr. Sharma provided the video to show L3Harris how Ms. Molitoris and Mr. Ruthersby's treatment of him severely affected him.

143.    He also sent an email stating that Mr. Ruthersby and Ms. Molitoris' treatment of him had caused his dystonia to be worse and that he had been on the verge of committing suicide.

144.    Instead of investigating Mr. Sharma's complaints of discrimination, L3Harris instead immediately informed Ms. Molitoris and Mr. Ruthersby of the complaints.

145.    On January 30, 2021, during working hours, Mr. Sharma spoke to HR regarding his complaint of disability discrimination and the video.

146.    During this conversation, Mr. Sharma made it clear that the video showed him suffering a symptom of his Parkinson's.

147.    During this conversation, Mr. Sharma made it clear that the video showing him suffering from dystonia was a pre-surgery video.

148.    The multiple surgeries that he underwent helped significantly to treat the dystonia Mr. Sharma was experiencing, however, the surgeries did not eliminate the symptom.

149.    After talking with HR and explaining the context of the video on January 30, 2020, Mr. Sharma was then placed on administrative leave and immediately denied access to his work email and benefits portal.

150.    Mr. Sharma was also denied access to his work phone from which he scheduled all medical appointments and for all medical services.

151.    Since he no longer had access to his work phone, his ability to schedule vital medical appointments was disrupted.

152.    L3Harris did not engage in the interactive process prior to placing Mr. Sharma on administrative leave.

153.    Instead, L3Harris alleged that Mr. Sharma was a "psychological" danger to himself.

154.    L3Harris later alleged that Mr. Sharma was a "psychological" danger to his co-workers.

155.    L3Harris made these allegations despite being aware the video showed Mr. Sharma suffering from dystonia which is a side effect of Parkinson's, a neurological disease.

156.    Mr. Sharma had never been violent in any way in the workplace.

157.    Mr. Sharma had never threatened a co-worker.

158.    Mr. Sharma had not threatened to harm himself.

159.    While on administrative leave, L3Harris consulted with Doctor Alex Rodrigues ("Dr. Rodrigues"), PsyD.

160.    Dr. Rodrigues is a forensic psychologist.

161.    Parkinson's is not a psychological disorder.

162.    L3Harris then required Mr. Sharma to go see Dr. Rodrigues.

163.    Knowing that Parkinson's is not a psychological disorder, Dr. Rodrigues did not engage in any medical analysis of Mr. Sharma.

164.    L3Harris then required Mr. Sharma to see Doctor Jennifer Geiger, PhD ("Dr. Geiger"), a neurologist.

165.    At the appointment, Dr. Geiger performed psychological, general intellect, higher level executive skills, memory evaluation, perception, motor and sensory skills, and aptitude test with Mr. Sharma.

166.    Dr. Geiger wrote a report on Mr. Sharma and provided it to L3Harris.

167.    L3Harris withheld the report from Mr. Sharma.

168.    Mr. Sharma was never informed of the contents of the report.

169.    To this day, Mr. Sharma does not know what the report states.

170.    After his appointment with Dr. Geiger, she told Mr. Sharma that he was perfectly alright.

171.    Upon information and belief, Dr. Geiger informed L3Harris that Mr. Sharma was not impaired in his decision making.

172.    Mr. Sharma was, and is seeing a neurologist regularly.

173.    Mr. Sharma's neurologist had cleared Mr. Sharma to return to work in October 2019.

174.    Mr. Sharma had provided this information to L3Harris at the company's request.

175.    After Mr. Sharma saw Dr. Geiger, L3Harris did not request that Mr. Sharma provide documentation from his own doctor or from any other neurologist clearing him to return to work.

176.    Mr. Sharma was on administrative leave for three months.

177.    During that time, he was not provided any updates on his employment.

178.    During that time he was not provided Dr. Geiger's report.

179.    During that time, he was not provided any information regarding his reports of discrimination.

180.    L3Harris then terminated Mr. Sharma on May 11, 2020.

**FIRST CLAIM FOR RELIEF**

**(Disability Discrimination, Wrongful Termination under the ADA in violation of 42 U.S.C. §12112(a))**

181.    Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

182.    At all relevant times to the allegations in this complaint, L3Harris was an employer within the meaning of and covered by, 42 U.S.C. §§ 12111(2) and (5)(A).

183.    At all relevant times to the allegations in this complaint Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

184.    Mr. Sharma has a disability, Parkinson's, that substantially limits one or more major life activities, including but not limited to walking, standing, and performing manual tasks.

185.    Mr. Sharma's Parkinson's substantially limits Plaintiff's neurological major bodily function.

186.    Mr. Sharma was qualified for the position of Software Engineering Manager.

187.    Mr. Sharma was qualified for the position of Scientist Software Engineering.

188.    Mr. Sharma could perform, either with or without reasonable accommodation, the essential functions of his job.

189.    L3Harris discriminated against Mr. Sharma in violation of 42 U.S.C. §12112 by:

      a.   Not engaging in the interactive process;

      b.   Demoting him;

      c.   Giving him a negative performance review;

      d.   Forcing him to see a forensic psychologist;

      e.   Placing him on administrative leave;

      f.   Terminating his employment because of his disability; and

g.  Treating him differently than non-disabled persons in the terms and conditions of employment.

190.  L3Harris terminated Mr. Sharma due to his disability.

191.  As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, or its agents, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

### SECOND CLAIM FOR RELIEF
### (Retaliation Under the ADA in Violation of 42 U.S.C. §§ 12203(a), 12112(a), and 12112(b)(5) and (6))

192.  Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

193.  At all relevant times to the allegations in this complaint, L3Harris was an employer subject to the requirements of the ADA as stated in 42 U.S.C. §12111(5).

194.  At all relevant times to the allegations in this complaint, Mr. Sharma was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

195.  At all times relevant to this case, Mr. Sharma had a disability as defined by 42 U.S.C. §12102(2) and was qualified for his job.

196.  Mr. Sharma has a disability, Parkinson's, that substantially limits one or more major life activities, including but not limited to walking, standing, and performing manual tasks.

197.  Mr. Sharma's Parkinson's substantially limits Plaintiff's neurological major bodily function.

198.  Mr. Sharma was qualified for the position of Software Engineering Manager.

199.  Mr. Sharma was qualified for the position of Scientist Software Engineering.

200.    Mr. Sharma could perform, either with or without reasonable accommodation, the essential functions of his job.

201.    L3Harris retaliated against Mr. Sharma based on his disability by placing him on administrative leave after he made a complaint of disability discrimination.

202.    L3Harris retaliated against Mr. Sharma by forcing him to see a forensic psychologist after Mr. Sharma made a complaint of discrimination.

203.    L3Harris retaliated against Mr. Sharma by treating him differently than non-disabled persons in the terms and conditions of employment.

204.    L3Harris terminated Mr. Sharma's employment effective on May 11, 2020 in retaliation for Mr. Sharma making a complaint of disability discrimination.

205.    Mr. Sharma was terminated in retaliation for his reasonable requests for accommodation for his disability.

206.    L3Harris acted with reckless indifference to Mr. Sharma's federally protected rights with knowledge it was acting in violation of federally protected rights.

207.    As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

### THIRD CLAIM FOR RELIEF
**(Wrongful Termination in Violation of the ADA in Violation of 42 U.S.C. §§ 12203(a), 12112(a), and 12112(b)(5) and (6), Perceived as Disabled)**

208.    Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

209.    At all relevant times to the allegations in this complaint, L3Harris was an employer

subject to the requirements of the ADA as stated in 42 U.S.C. §12111(5).

210.    At all relevant times to the allegations in this complaint, Mr. Sharma was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

211.    At all times relevant to this case, L3Harris perceived Mr. Sharma to be disabled.

212.    Mr. Sharma was qualified for the position of Software Engineering Manager.

213.    Mr. Sharma was qualified for the position of Scientist Software Engineering.

214.    Mr. Sharma could perform, either with or without reasonable accommodation, the essential functions of his job.

215.    L3Harris discriminated against Mr. Sharma based on a perceived disability in violation of 42 U.S.C. §12112 by:

     a.  Not engaging in the interactive process;

     b.  Giving him a negative performance review;

     c.  Forcing him to see a forensic psychologist;

     d.  Placing him on administrative leave;

     e.  Terminating his employment because of his perceived disability; and

     f.  Treating him differently than non-disabled persons in the terms and conditions of employment.

216.    L3Harris terminated Mr. Sharma due to his perceived disability.

217.    As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, or its agents, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## FOURTH CLAIM FOR RELIEF
### (Disability Discrimination, Failure to Accommodate Under the ADA in Violation of 42 U.S.C. §§ 12102, 12112(b)(5)(A))

218.    Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

219.    Mr. Sharma had a "disability" within the meaning of 42 U.S.C. § 12102.

220.    Mr. Sharma has a disability, Parkinson's, that substantially limits one or more major life activities, including but not limited to walking, standing, and performing manual tasks.

221.    Mr. Sharma's Parkinson's substantially limits Plaintiff's neurological major bodily function.

222.    Mr. Sharma was qualified for the position of Software Engineering Manager.

223.    Mr. Sharma was qualified for the position of Scientist Software Engineering.

224.    Mr. Sharma could perform, either with or without reasonable accommodation, the essential functions of his job.

225.    Mr. Sharma's disability affected his muscles and movement of his body, affecting his ability to drive.

226.    Mr. Sharma informed L3Harris of his dystonia.

227.    L3Harris could have accommodated Mr. Sharma because driving was not an essential function of his job.

228.    L3Harris could have accommodated Mr. Sharma because going into the office was not an essential function of his job.

229.    L3Harris did not engage in the interactive process.

230.    L3Harris failed to provide an accommodation and terminated Mr. Sharma.

231.    As a direct and proximate result of the intentionally discriminatory acts and practices of

Defendant not to reasonably accommodate Mr. Sharma's disability, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**(Hostile Work Environment in Violation of the ADA)**

232.   Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

233.   Mr. Sharma was subjected to repeated and severe harassment based on his serious health condition and disability.  Mr. Sharma reported the multiple harassment events to management.

234.   L3Harris took no actions to stop the harassment.

235.   At all times relevant to this case, Mr. Sharma had a disability as defined by 42 U.S.C. §12102(2) and was qualified for his job.

236.   Mr. Sharma was therefore protected by the ADA and L3Harris was an employer subject to the requirements of the ADA as stated in 42 U.S.C. §12111(5).

237.   L3Harris violated the ADA when it created a hostile work environment for Mr. Sharma based on his disability.

238.   L3Harris acted with malice or reckless indifference to Mr. Sharma's federal protected rights with full and complete knowledge that the behavior was in violation of federal law.

239.   As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

**SIXTH CLAIM FOR RELIEF**

**(Race and National Origin Discrimination, Wrongful Termination in violation of 42 U.S.C § 2000e-2)**

240.    Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

241.    At all relevant times to the allegations in this complaint, L3Harris was an employer within the meaning of and covered by 42 U.S.C. § 2000e(b).

242.    At all relevant times to the allegations in this complaint, Mr. Sharma was an employee within the meaning of 42 U.S.C. § 2000e(f).

243.    Mr. Sharma is a South Asian male of Indian descent and a member of a protected class under Title VII.

244.    At all times during his employment, Mr. Sharma was performing at or above the level of L3Harris' reasonable expectations.

245.    Despite Mr. Sharma' qualifications and performance, he was discriminated against because of his race and national origin when his employment was terminated.

246.    L3Harris discriminated against Mr. Sharma in terms and conditions of his employment on the basis of race and national origin in violation of 42 U.S.C. § 2000e-2 when L3Harris terminated Mr. Sharma based on his race and national origin.

247.    L3Harris is liable for the acts and omissions of its agents and employees.  L3Harris either directly or by and through its employees, discriminated against Mr. Sharma when it terminated Mr. Sharma' employment on the basis of his race and national origin.

248.    L3Harris acted with malice, indifference, and a reckless disregard of Plaintiff's rights.

249.    As a direct and proximate result of the intentionally discriminatory acts and practices of L3Harris, or its agents or employees, Plaintiff has suffered and will continue to suffer injury,

including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

**SEVENTH CLAIM FOR RELIEF**
**(Race and National Origin Discrimination, Retaliation in violation of 42 U.S.C § 2000e-3)**

250.    Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

251.    At all relevant times to the allegations in this complaint, L3Harris was an employer within the meaning of and covered by 42 U.S.C. § 2000e(b).

252.    At all relevant times to the allegations in this complaint, Mr. Sharma was an employee within the meaning of 42 U.S.C. § 2000e(f).

253.    Mr. Sharma is a South Asian male of Indian descent and a member of a protected class under Title VII.

254.    Mr. Sharma engaged in protected opposition to discrimination when he complained to management at L3Harris that he was being treated differently because of his race and national origin.

255.    Plaintiff made complaints to management and to the Human Resources offices of L3Harris.

256.    L3Harris terminated Mr. Sharma effective on May 11, 2020.

257.    Mr. Sharma was terminated by L3Harris in retaliation for making complaints to management about racial and national origin discrimination in the workplace in violation of 42 U.S.C § 2000e-3.

258.    L3Harris committed an unlawful act of retaliation by limiting, segregating or classifying Plaintiff, adversely affecting him, including identifying Plaintiff for termination because of his

complaints raised about his treatment due to his race and skin color. A reasonable employee would have found the actions Plaintiff challenged materially adverse.

259.    There exists a causal relationship between Plaintiff's acts in opposition to discrimination and his non-promotions and his termination.

260.    L3Harris acted with malice or reckless disregard of Mr. Sharma' federally protected rights with knowledge it was acting in violation of federally protected rights.

261.    As a direct and proximate result of the intentionally discriminatory acts and practices of L3Harris, or its agents or employees, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## EIGHTH CLAIM FOR RELIEF
### (Retaliation Under the FMLA, 29 U.S.C. § 2615(a)(2))

262.    Mr. Sharma incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

263.    L3Harris is an employer within the meaning of and covered by the Family and Medical Leave Act ("FMLA") as defined in 29 U.S.C. § 2611(4), during Plaintiff's employment with Defendant.

264.    At all relevant times to the allegations in this complaint Mr. Sharma was an "eligible employee" under the FMLA as defined by 29 U.S.C. § 2611(2)(A).

265.    Mr. Sharma was entitled, as an eligible employee, to FMLA under 29 U.S.C. § 2612(a)(1)(D), because of a serious health condition.

266.    Mr. Sharma had serious health conditions as defined by 29 U.S.C. § 2611(11).

267.    Mr. Sharma was entitled, as an eligible employee, to a total of 12 workweeks of leave during any 12-month period.

268.    Mr. Sharma availed himself of the protected rights under FMLA, by providing his employer notice greater than 30 days of the anticipated foreseeable departure.

269.    Mr. Sharma took eight (8) weeks of leave under the FMLA.

270.    L3Harris unlawfully retaliated against Mr. Sharma for exercising his rights provided under 29 U.S.C. § 2615(a)(2).

271.    L3Harris retaliated against Mr. Sharma in violation of 29 U.S.C. § 2615(a)(2) by:

    a.   Giving him a negative performance review;

    b.   Forcing him to see a forensic psychologist;

    c.   Placing him on administrative leave;

    d.   Terminating his employment; and

    e.   Treating him differently than non-disabled persons in the terms and conditions of employment.

272.    These actions by L3Harris are actions that a reasonable employee would have found materially adverse.

273.    L3Harris had an obligation, as a qualified employer, to provide Mr. Sharma FMLA benefits after being notified of Mr. Sharma's disability since 2018.

274.    L3Harris' subsequent decision to terminate Mr. Sharma is casually related to his engaging in protected activity by exercising of his rights under the FMLA.

275.    There is a casual connection and close proximity between the protected activity of taking FMLA and the materially adverse action of termination.

276.    L3Harris' termination of Mr. Sharma was in retaliation for him requesting and taking

FMLA to have surgery, which violated his rights under the statute.

277.    As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

WHEREFORE, Plaintiff Mr. Sharma respectfully requests this court to grant the following relief:

a) Award Plaintiff Mr. Sharma all damages to which he is entitled, including, but not limited to back pay, front pay, benefits, and reinstatement pursuant to applicable laws, including without limitation, 42 U.S.C. §§ 2000e-4-6, 2000e-8, 2000e-9, 42 U.S.C. § 12117, and 29 U.S.C. § 2617(a)(2);

b) Award compensatory and punitive damages against Defendants pursuant to applicable statutes, including, without limitation under the ADA, and damages available under 42 U.S.C. § 1981a;

c) An award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

d) Willful penalties of $100 per offense per day pursuant to 29 U.S.C. § 2619;

e) Award attorney fees and costs pursuant to applicable statutes, including, without limitation to the fullest extent permitted by law, 42 U.S.C. 2000e-5(k), 42 U.S.C. §§ 1983, 1988, and 42 U.S.C. § 12205;

f) An award for pre-judgment and post judgment interest to the fullest extent permitted by law; and

g) Grant Plaintiff Mr. Sharma such other equitable and further relief as to this court appears necessary and proper, including such relief available under 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 1981a, 42 U.S.C. § 12117, and 29 U.S.C. § 2617(a)(1)(B).

## **Demand for Jury Trial**

Plaintiff, Utkal Sharma, hereby demands a trial by jury.

*s/ Allison L. Derschang*
Allison L. Derschang
Thomas J. Arckey
ARCKEY & ASSOCIATES, LLC
6860 S. Yosemite Court, Suite 2000
Centennial, CO  80111
(303) 798-8546
Email:  aderschang@arlaw.us; tja@arlaw.us
Attorneys for Plaintiff